**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

UNITED STATES OF AMERICA )
                                                   )
v.                                                 )  Court No. 3:26-cv-__46_____
                                                   )
APPROXIMATELY $21,311.00 IN U.S.                   )
CURRENCY, A 2023 GREEN DODGE                       )
CHALLENGER HELLCAT REDEYE,                         )
AND HIGH-END CLOTHING/BAGS                         )

## AFFIDAVIT IN SUPPORT OF FORFEITURE IN REM

I, Dylan M. Parker, United States Department of Justice, Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

## BACKGROUND AND EXPERIENCE

1.    I am an investigative law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516 and Title 21 United States Code, Section 878.

2.    I am employed as a Special Agent (SA) by the Drug Enforcement Administration (DEA), United States Department of Justice, and I have been employed in this capacity since 2024. I am currently assigned to the DEA Charlottesville, Virginia Post of Duty (POD). I attended a sixteen (16) week Special Agent DEA Academy in Quantico, Virginia. During this time, I obtained my Special Agent status by DEA, which is certified by the Department of Justice. Prior to being employed by DEA, I was a police officer with the United States Secret Service for over three (3) years. I have received courses of instruction in investigative techniques related to illegal narcotics investigations. During my law enforcement career, I have participated in and have conducted

investigations, which have resulted in the arrest of individuals who have received and distributed controlled substances as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs. In addition, I have conducted, in connection with this and other cases, follow-up investigations concerning concealment of illegal drug-produced assets, money, financial records, etc. and the identification of co-conspirators through the use of ledgers, financial records, telephone and email records, photographs, as related to procurement, financial, immigration and drug crimes. These investigations have resulted in the arrest of individuals who have imported, smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine, marijuana, and diverted pharmaceuticals, as well as the seizure of controlled substances and the proceeds of the sale of these controlled substances.

3.      As part of my official duties, I have utilized most traditional law enforcement techniques, including visual surveillance, interviewing of witnesses, the execution of search warrants, the use of cooperating witnesses, the seizure of drug evidence, the controlled purchases of drug evidence, court authorized pen registers, court authorized interceptions of wire communications, the federal grand jury, and undercover techniques.  I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity.

4.      The statements contained in this affidavit are based in part on information provided by officers, agents or deputies from the Virginia State Police (VSP) 3A Narcotics & Gang Task Force.  The VSP 3A Task Force and the DEA have been investigating a marijuana trafficking conspiracy organization operating in the Western District of Virginia. This affidavit contains information necessary to support a complaint relating to the forfeiture of $21,311 U.S. Currency, 2023 Green Dodge Challenger Hellcat Redeye, and High-End Clothing/Bags ("THE

2

DEFENDANT PROPERTY") seized from Aloys HOPFENSPERGER IV and Shirley BROWN at 133 Troy Woods Court, Troy, VA 22974, on September 16, 2025, as proceeds traceable to the distribution of controlled substances in violation of 21 U.S.C. § 841.

5.      As set forth in detail below, THE DEFENDANT PROPERTY is forfeitable under 21 U.S.C. § 881(a)(6) as proceeds or property traceable to proceeds of violations of 21 U.S.C. §§ 841(a)(1) and/or property furnished or intended to be furnished in exchange for a controlled substance.

## SUMMARY OF THE INVESTIGATION

6.      As part of my current assignment, I have been participating in an investigation into the trafficking of marijuana by individuals in the Western District of Virginia ("TARGET SUBJECTS").  As described in greater detail below, the investigation has revealed that the Target Subjects were participating in a conspiracy to distribute and possess with intent to distribute marijuana (a Schedule I controlled substance) in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute and distribution of controlled substances, and 21 U.S.C. § 846, conspiracy to commit such offenses, as well as violations of Virginia Code § 18.2-248.1. During the investigation, THE DEFENDANT PROPERTY was seized from HOPFENSPERGER IV and BROWN as proceeds of illegal marijuana trafficking and/or money intended to be used to purchase large amounts of marijuana to sell.

## THE INVESTIGATION

7.      On or about January 25, 2025, the Virginia State Police (VSP) 3A Narcotics & Gang Task Force conducted a controlled purchase from CVille Canna Markets, 1147 River Road, Charlottesville, VA 22901. CVille Canna Markets was identified as a "pop-up shop" to appear for a limited time or in a limited space to sell marijuana. There is no legal way to buy or sell marijuana

3

in Virginia, making such pop-up shops illegal.[1] A VSP Confidential Source (CS-1) and an Undercover Agent (UC-1) entered the CVille Canna Markets to purchase marijuana from vendors that were present. Both CS-1 and UC-1 were wearing audio-visual equipment.  CS-1 approached the CrunchTime Farms vendor and purchased one (1) plastic baggie containing approximately one (1) ounce of green plant material (suspected marijuana) in exchange for $100 of VSP buy money. UC-1 also approached the CrunchTime Farms vendor and purchased two (2) plastic baggies containing approximately two (2) ounces of green plant material (suspected marijuana) in exchange for $200 of VSP buy money. VSP searched CS-1 before and after the controlled purchase, and no illicit contraband was recovered. Due to significant background noise and the angle of the camera, the audio-visual recording for these encounters did not capture the identity of the individual selling the marijuana for either encounter. The suspected marijuana was sent to the Virginia Department of Forensics Services (DFS) Laboratory for analysis, where it tested positive for marijuana.

8.      Thereafter, Agents identified Aloys HOPFENSPERGER IV as the owner of CrunchTime Farms through social media analysis. In or about May 2, 2025, I received information regarding large cash financial transactions pertaining to HOPFENSPERGER IV. I then reviewed HOPFENSPERGER IV's Instagram page, which included numerous posts promotion CrunchTime Farms and identifying it as his business. His Instagram handle is Crunchtime_Farms. Shirley BROWN       is       identified       in       various       posts       as       his       romantic       partner.

---

[1]      To evade the prohibition of the sale of marijuana in Virginia, distributors will often have various merchandise for sale and "gift" marijuana with the purchase of the merchandise. *See* https://cardinalnews.org/2023/09/06/cannabis-related-stores-are-popping-up-across-virginia-amid-confusion-over-the-states-marijuana-laws/





6





9.      CrunchTime Farms is not a registered business entity with the Virginia State Corporation Commission. CrunchTime Kennels VA, LLC and Trust Enterprise LLC are both other business entities registered with the Virginia State Corporation Commission identifying HOPFENSPERGER IV as the registered agent, but both businesses are currently pending inactive status. Additionally, neither CrunchTime Farms nor HOPFENSPERGER IV has filed tax returns with the Internal Revenue Service in the past five years. Additionally, searches with the Virginia Employment Commission returned no employment information for HOPFENSPERGER IV in the past five years. All employers in Virginia must report wages of $1,500 or more per quarter to the Virginia Employment Commission. 16 Va. Admin. Code § 32-20. All employers that must pay an unemployment tax are required to report such wages to the Virginia Employment Commission. Va. Code § 60.2-210, *et. seq.* Therefore, based on the VEC information and HOPFENSPERGER IV's Instagram promoting his business with large amounts of cash and marijuana, as well as transporting large amounts of cash and marijuana to/from California, HOPFENSPERGER IV likely does not have any legitimate, lawful employment and all of his income comes from CrunchTime Farms and the illegal sale of marijuana.

10.      On or about May 10, 2025, the VSP 3A Narcotics & Gang Task Force conducted another controlled purchase from CVille Canna Markets, 1147 River Road, Charlottesville, VA 22901. CS-1 and CS-2 entered the CVille Canna Markets to purchase marijuana from vendors that were present. CS-1 and CS-2 approached the CrunchTime Farms vendor and purchased a black plastic bag labeled "GS" containing approximately one (1) ounce of green plant material (suspected marijuana), in exchange for $200 VSP buy money and one (1) a black plastic bag named "Grape Soda" containing approximately one (1) ounce of green plant material (suspected marijuana) in exchange for $200 VSP buy money. BROWN A/K/A "Tootie" was identified by

9

CS-1 and Agents via the audio-visual recording device as packaging the suspected marijuana and handing it to CS-1 and CS-2. VSP searched CS-1 and CS-2 before and after the controlled purchase, and no illicit contraband was recovered. The suspected marijuana was sent to the Virginia Department of Forensics Services (DFS) Laboratory for analysis, where it tested positive for marijuana.

11.     On or about May 16, 2025, the VSP 3A Narcotics & Gang Task Force conducted a controlled purchase from The Hidden Leaf, 105 W Main Street, Suite 200, Charlottesville, VA 22902. Through Instagram, Investigators identified Hidden Leaf as another "pop-up shop." CS-1 entered Hidden Leaf to purchase marijuana from the vendors that were present. CS-1 approached the CrunchTime Farms vendor and purchased a black plastic bag labeled "Grape Soda", containing approximately one (1) ounce of green plant material (suspected marijuana) in exchange for $200 in VSP buy money. VSP searched CS-1 before and after the controlled purchase, and no illicit contraband was recovered. CS-1 was wearing audio-visual equipment but due to background noise and the angle of the camera, Investigators were unable to identify the person selling the marijuana. The suspected marijuana was sent to the Virginia Department of Forensics Services (DFS) Laboratory for analysis, where it tested positive for marijuana.

12.     On or about September 15, 2025, Fluvanna County Sheriff's Office (FCSO) responded to the Lake Monticello Main Gate, 855 Jefferson Drive, Palmyra, VA 22963, for the report of an individual with a gunshot wound. Upon law enforcement's arrival to the main gate of the property, they encountered HOPFENSPERGER IV with a gunshot wound on the ground. The Lake Monticello security guard at the main gate informed law enforcement upon their arrival that HOPFENSPERGER IV arrived at the Main Gate in a 2024 Hyundai Palisade bearing Virginia registration TZK-7851, registered to Shirley BROWN.

10

13.     Law enforcement later that day identified BROWN as the girlfriend of HOPFENSPERGER IV and the driver of the Hyundai Palisade. The Lake Monticello security guard informed law enforcement that BROWN dropped HOPFENSPERGER IV off at the main gate and stated that she had to "go check on the kids", then departed on Lake Monticello Road.

14.     On or about September 15, 2025, Investigator Brennan attempted to contact BROWN at 434-282-8192, and she did not answer the phone. Investigators noted this number was on file in law enforcement databases. That same day, Investigators then obtained a warrant to ping for her phone number. Pursuant to that warrant, Investigators contacted BROWN's cellphone carrier and obtained the GPS location emitting information for BROWN's cellphone. Simultaneously, Fluvanna County Sheriff's Office units began canvassing the previous known addresses of BROWN and HOPFENSPERGER IV to locate the Hyundai Palisade and BROWN.

15. On September 16, 2025, a location ping returned around the area of Troy Woods Court and Investigators canvassed the area. In front of 133 Troy Woods Court, Troy, VA 22974, Investigators located the Hyundai Palisade (TKZ-7851). Additional units responded and announced "Police" then attempted to contact anyone inside 133 Troy Woods Court due to the condition of the property appearing to have been the site of a robbery. At this time, Investigators did not know 133 Troy Woods Court was HOPFENSPERGER IV's address but later obtained that information after contacting the property owner. Investigators noticed the back door of the residence was broken. Investigators conducted a protective sweep of the residence and discovered obvious signs of a struggle and red substance appearing to be blood located throughout the residence. Investigators also located a 2023 Dodge Challenger in the garage and a safe in the front yard of 133 Troy Woods Court. At this point, Investigators sought a warrant to search the residence.

16.    On or about September 16, 2025, the VSP 3A Narcotics & Gang Task Force and the Drug Enforcement Administration (DEA) Charlottesville Post of Duty (POD) assisted Fluvanna County Sheriff's Office (FCSO) with a state issued search warrant at 133 Troy Woods Court, Troy, VA 22974 pertaining to a recent shooting. No one was present at the residence during the execution of the search warrant. During the search, Investigators determined that the residence was actively rented by Aloys HOPFENSPERGER IV and Shirley BROWN, the owners of CrunchTime Farms. This was determined through discussion with the property manager and the items in the home. During the search warrant, Investigators located 900.88 grams of suspected marijuana in two (2) silver bags, seven (7) black Ziploc bags containing 198.54 grams of marijuana, along with CrunchTime Farms marijuana packaging materials consistent with that from the controlled buys, a packaging room, drug ledgers, several empty plastic bags that previously contained suspected marijuana, and $21,311.00 in U.S. Currency..

17.    Specifically, Investigators and Agents seized the $21,311.00 U.S. Currency as suspected drug proceeds from a safe that was located in the front yard. The safe was in the front yard with damage consistent with attempted entry of the safe with a pry bar and appeared to have been thrown down the front steps of the home. To open the safe, Agents called the safe manufacturer. The manufacturer stated that if they removed the front panel, they would find a skeleton key to open the safe. Agents did so and used the skeleton key to open the safe. Upon opening the safe, Agents identified the $21,300.00 in U.S. Currency, which was loose and not packaged or banded. One of the bills of currency also had a substance appearing to be blood. The currency was sent to the forensics lab for evaluation, but Investigators have not received the forensics report to date. Agents know that drug dealers primarily deal in cash because it offers a

degree of anonymity, allowing them to conduct illegal transactions without a traceable financial footprint.

18.    During the search warrant execution Agents also seized a 2023 Green Challenger Hellcat Redeye from the garage of 133 Troy Woods Court, Troy. HOPFENSPERGER IV is the registered owner of the 2023 Green Challenger. The vehicle has no liens against it and was purchased by HOPFENSPERGER IV on June 6, 2023, from CMA's Valley Chrysler Dodge Jeep RAM, 348 Lee Jackon Highway, Staunton, VA 24401. Because HOPFENSPERGER IV has no legitimate income, there is probable cause to believe HOPFENSPERGER IV purchased the 2023 Green Challenger with proceeds of the illegal sale of marijuana.

19.    High-End designer clothing/bags from the bedroom and the office of 133 Troy Woods Court. Specifically, Agent seized the following items as purchased with proceeds from the illegal sale of marijuana during the execution of the search warrant:

13

| Count | ITEMS/CONTENT Description |
|---|---|
| 1 | Black leather belt w/ gold tone LV buckle ($620) |
| 1 | Brown/Green plaid LV reversible belt w/ gold tone buckle ($550) |
| 1 | Green/blue LV belt w/ gold tone buckle ($685) |
| 1 | Black rainbow LV belt w/ iridescent silver buckle ($1,085) |
| 1 | White rainbow LV belt w/ iridescent silver buckle ($950) |
| 1 | Brown/light brown LV belt w/ silver buckle ($1,075) |
| 1 | Black w/ turquoise and green SS polo LV sweater ($1,450) |
| 1 | Blue crew neck w/ blue LV monogram sweater t-shirt ($1,080) |
| 1 | Blue LV SS multi-color button chambray ($3,027) |
| 1 | Damier 3D light LV denim shorts ($2,750) |
| 1 | LV monogram printed technical track top w/ red, black, white panels ($5,819) |
| 1 | LV Trainer sneaker black and white colorway denim ($1,320) |
| 1 | Bom Die Flat Comfort Mule LV two strap brown sandal ($1,120) |
| 1 | LV Tan, brown, black monogram Speedy Trunk 20 bag ($3,550) |
| 1 | Burberry tan, black, brown, red plaid reversible belt w/ silver buckle ($321.37) |
| 1 | Burberry Blaze House Check w/ leather satchel brown trim ($595) |
| 1 | Christopher PM LV black backpack ($4,717) |
| 1 | Green Goyardine bag coated leather canvas w/ leather trim ($2,924.08) |
| 1 | Green Goyardine coated canvas cardholder ($1,305.71) |
| 1 | Green Goyardine canvas w/ green leather ($700) |
| 1 | Green Cisalpin Goyardine canvas and leather ($6,750) |
| 1 | Keepall Bandolier 50 Damier Palm Trees LV travel bag ($5,350) |
| 1 | Speedy P9 Bandouliere 50 LV bag Pharrell Williams Collection ($14,500) |
| 1 | LV Green Speedy P9 Bandouliere 40 bag ($25,950) |
| 1 | Blue LV SS Regatte button collar shirt ($750) |
| 1 | LV Club Flasg Printed SS button shirt ($1,350) |
| 1 | Deep brown full zip hoodie w/ LV monogram ($3,500) |
| 1 | Blue LV monogram greaidnet t-shirt crew neck ($700) |
| 1 | Multi-color LV monogram SS crewneck ($3,085) |
| 1 | LV monogram multi-color flowers gradient printed windbreaker ($5,300) |
| 1 | Green Moncler Karakorum down jacket w/ vest ($2,360) |
| 1 | Moncler black down jacket ($1,350) |

20.     A Virginia Employment Commission search of BROWN returned no employment history for the past five years. Therefore, BROWN does not appear to have legitimate, lawful income from which she could have purchased any of the seized items. Because neither her nor HOPFENSPERGER IV have legitimate income, there is probable cause the seized items were purchased with proceeds of illegal marijuana sales.

21.     On or about September 16, 2025, Investigators obtained an additional state search warrant to seize the suspected marijuana identified during the search warrant execution upon 133 Troy Court. Upon seizure, the suspected marijuana was sent to the Virginia Department of Forensics Services (DFS) Laboratory for analysis, where it tested positive for marijuana.

14

22.     On or about February 21, 2026, HOPFENSPERGER IV opened a stand-alone location for CrunchTime Farms at 722 Rio Road W Suite 9, Charlottesville, VA 22901. HOPFENSPERGER IV advertised the opening of the retail location on his Instagram page.

23.     On or about March 8, 2026, the VSP 3A Narcotics & Gang Task Force conducted another controlled purchase from CrunchTime Farms at 722 Rio Road W Suite 9, Charlottesville, VA 22901. Prior to the controlled purchase, Investigators observed HOPFENSPERGER IV exit the passenger seat of a black Chevrolet Silverado and enter CrunchTime Farms. CS-1 entered CrunchTime Farms, Investigators heard CS-1 via the audio-visual recording device, identifying BROWN A/K/A "Tootie" working behind the counter and further discussion about marijuana pricing. Agents observed via the audio-visual recording, over twenty large plastic containers sat on the counter, all containing suspected marijuana. CS-1 provided BROWN with $450 VSP buy money in exchange for three (3) black resealable baggies containing approximately three (3) ounces of green plant material (suspected marijuana). Following the transaction, BROWN could be observed via the audio-visual recording packaging marijuana, as HOPFENSPERGER IV was observed looking at the large plastic containers containing suspected marijuana. CS-1 was searched before and after the controlled purchase, no illicit contraband was recovered. The suspected marijuana was field tested and tested positive for marijuana. Additionally, Investigators sent the suspected marijuana to the Virginia Department of Forensics Services (DFS) Laboratory for further analysis and are currently awaiting those results.

24.     Since HOPFENSPERGER IV's September 2025 shooting, Investigators have attempted to determine the individual(s) that shot HOPFENSPERGER IV and forced entry to 133 Troy Court. HOPFENSPERGER IV and BROWN, however, have declined to cooperate with law enforcement. Due to their lack of cooperation, the apparent forced entry of 133 Troy Court, the

15

fact HOPFENSPERGER IV was shot, and the lack of any firearms uncovered during the search of 133 Troy Court, Investigators believed the attempted shooting was related to the HOPFENSPERGER IV's distribution of marijuana.

25.    On or about April 27, 2026, a Fluvanna County grand jury returned an indictment against HOPFENSPERGER IV for possession with intent to distribute less than 5 pounds of marijuana.

## CONCLUSION

26.    Based on your Affiant's knowledge of the investigation, the review of employment records, the examination of evidence seized from HOPFENSPERGER IV and BROWN, your affiant believes that THE SUBJECT PROPERTY is from the distribution of narcotics, particularly those obtained on September 16, 2025, and was intended to be used for further purchases of narcotics. Your Affiant has concluded that there is evidence that HOPFENSPERGER IV and BROWN have distributed marijuana since at least January 2025. Your affiant submits that there is probable cause to believe that THE SUBJECT PROPERTY is forfeitable under 21 U.S.C. § 881(a)(6) as currency and other things of value constituting proceeds or property furnished or intended to be furnished in exchange for a controlled substance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May, 2026.

*Dylan M. Parker*
DYLAN M. PARKER
Special Agent
Drug Enforcement Administration

16